## ROSS v. BURKE.

Court of Appeals of District of Columbia.
Submitted March 14, 1927. Decided May 2, 1927.

No. 1912.

Patents ⚖=90(3)—Party to interference proceeding, establishing priority of conception, held not to have shown diligence in developing patent, entitling him to priority.

Party to interference proceeding, involving means for throwing a noncombustible spray to prevent destruction of aeroplane by fire, establishing priority of conception, *held* not to have shown diligence in development, entitling him to priority.

Appeal from Commissioner of Patents.

Patent interference proceeding between Waldo A. Ross and George W. Burke, Jr. From a decision of the Commissioner of Patents, awarding priority to the latter, the former appeals. Affirmed.

C. L. Sturtevant, of Washington, D. C., for appellant.

J. F. Mothershead, of Washington, D. C., and E. T. Noe, Jr., of Dayton, Ohio, for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This is an interference proceeding involving a single issue, as follows: "In an aeroplane, or the like, the combination with a hydrocarbon engine of means for throwing a spray of noncombustion supporting agent into the draft stream passing over the engine and at points in front of the engine, so that the noncombustion agent will be carried by the draft onto and about the engine."

There were concurrent decisions in the tribunals of the Patent Office awarding priority to the appellee, Burke. Burke is the senior party, and established a disclosure of the invention in January, 1919, on which he filed his application May 20, 1919. The date of conception and disclosure is conceded by appellant, Ross.

The testimony discloses that Ross made experiments in Sioux Falls, S. D., in 1912, which amounted to a conception and disclosure of the invention in issue. It is not seriously urged that the Sioux Falls experiment amounted to more than a disclosure of the invention, since Ross admits that the device was disconnected from the aeroplane and possibly found its way to a second-hand dealer.

The case below, and the case here, turns upon the single issue of whether or not Ross, who did not file his application until July 6, 1920, can show diligence looking to a reduction of the invention to practice from just prior to January, 1919, when Burke entered the field, and extending up to the time that Ross filed his application.

The record discloses that in August, 1914, on the outbreak of the World War, Ross obtained a commission in the Canadian Engineers, and was sent to England. He continued in the British service until September, 20, 1918, when he resigned, came to Washington, and applied for a commission in the United States Motor Transport Service. During this visit to Washington, he called on attorneys and consulted them in regard to an invention to prevent the destruction of an aeroplane by fire. It resulted in an arrangement with the attorneys by which an application for patent was filed September 26, 1918, which matured into a patent. This patent, however, does not disclose the present invention, and there is no apparent reason why the invention in issue could not have been incorporated in that patent, had Ross been diligently following up his conception and disclosure of 1912.

On October 20, 1918, Ross, having obtained his commission as captain in the Motor Transport Service, was ordered overseas, but before sailing the Armistice was signed. He returned to Washington, where he remained until February, 1919, and on March 30, 1919, he was ordered to Walter Reed Hospital for treatment for a broken arm. While in the hospital he made the acquaintance of an aviator, who had been injured in England as the result of his plane catching fire in the air. Ross disclosed his ideas to his friend, and the matter was talked over with other officers in the hospital, resulting

in the incorporation of a company in September, 1919.

It will be observed from this evidence that Ross did nothing toward developing his invention from the time he left Sioux Falls until after Burke entered the field. An attempt is made to explain away this delay, because of the active service of Ross during the World War, but this, we agree with the tribunals below, is insufficient. There is no theory, under the facts in this case, which would lawfully justify the award of priority to Ross.

The decision of the Commissioner is affirmed.